Mr. Glenn W. Adams, Manager State Compensation Insurance Fund 1313 Sherman Street Denver, Colorado 80203
Dear Mr. Adams:
QUESTION PRESENTED AND CONCLUSION
You have asked my opinion as to whether the claims adjusters employed by the Division of State Compensation Insurance Fund are subject to the licensing requirements set forth in C.R.S. 1973,10-2-101 et seq.
My conclusion is "no."
ANALYSIS
The above statute provides, in pertinent part, that:
 Section 10-2-102(1) No person shall act as or hold himself out to be an adjuster in this state unless licensed therefor by this state; . . . .
The Act defines an "adjuster" as:
 Section 10-2-101(1)(a) `Adjuster' means any person who, as an independent contractor or as an employee of an independent contractor, adjustment bureau, association, insurance company, broker, agent, or general agent, for compensation, fee, or commission investigates or adjusts losses arising under insurance contracts on behalf of either the insurer or insured.
The Act excludes four classes of persons from the definition of "adjuster" and thus from the licensing requirements. Those persons exempted from the licensing requirements under 10-2-101et seq. are:
 10-2-101(1)(b)(I) An attorney-at-law who adjusts insurance losses from time to time and incidental to the practice of law, and who does not advertise or represent that he is an adjuster; (II) a salaried employee of an insurer who is not regularly engaged in the adjustment of insurance claims; (III) a licensed agent or general agent for an authorized insurer, the agent or general agent receives no compensation for adjusting; except that an employee of such agent or general agent who adjusts claims solely for insurers represented by such agent or general agent under policies issued through his agency is an adjuster under this part 1; (IV) persons employed only for the purpose of obtaining facts surrounding a loss or furnishing technical assistance to a licensed adjuster, including, but not limited to, photographers, estimators, private detectives, engineers, handwriting experts, and attorneys-at-law.
In my opinion, employees of the State Compensation Insurance Fund who adjust claims arising under State Compensation Insurance Fund policies are subject to the provisions of C.R.S. 1973, 10-2-101et seq. In reaching this opinion I considered the general background and operation of the State Compensation Insurance Fund, the scope and purpose of C.R.S. 1973, 10-2-101et seq. and general legal principles of equality and uniformity in the application of licensing laws.
First, the organic statute creating the State Compensation Insurance Fund indicates that that fund was created for the benefit of injured employees and the dependents of killed employees. C.R.S. 1973, 8-54-102. The fund, which consists of all premiums received and paid into it, assures that there will be adequate insurance coverage against liability on the part of contributing employers to pay or furnish workmen's compensation benefits to their employees. The premium rates charged by the State Compensation Insurance Fund for compensation insurance are fixed by the Industrial Commission of Colorado. C.R.S. 1973, 8-54-105. The fund, through its manager who is empowered to enter into contracts of insurance with employers, insures employees of both the public sector (often referred to as a "captured" market) and the private sector (often referred to as the "volunteer" market). It is my understanding that presently approximately seventy per cent of the funds premium dollars are received from the volunteer market.
In practical terms, the fund operates as any other workmen's compensation insurance company or carrier; that is, it underwrites and issues policies of insurance, sets the premium rates therefore, receives claims from insureds and employs persons for the purpose of adjusting those claims submitted pursuant to its insurance policies. Thus, even though the state fund is a trust fund and even though the State Insurance Fund is an agency of the state, it has the same characteristics as any insurance carrier. G. Couch, Cyclopedia ofInsurance Law, 2d, § 18:38 (1959).
Second, it must be noted that the definition of "adjuster" in C.R.S. 1973, 10-2-101(1)(a) is very broad. As quoted above, that section defines an adjuster as any person who, as an independent contractor or as an employee of an independent contractor, adjustment bureau, association, insurance company, broker, agent, or general agent for compensation, fee, or commission investigates or adjusts losses arising underinsurance contracts or on behalf of either the insureror insured.
The operative language in this definition is the portion underlined above. That is, the statute should be interpreted as defining an adjuster primarily by focusing on the nature of the services performed rather than focusing on the entity for whom those services are performed. Such an interpretation is in line with general insurance law. See J. Appleman, Insurance Lawand Practice § 8646 (1946) wherein an adjuster is defined as:
 One who represents an insurer or insured in the adjustment of claims under an insurance policy.
In your letter to me, you cite the language in the definition of "adjuster" which refers to the employment relationship of the person adjusting (i.e. . . . any person who, as anindependent contractor or as an employee of anindependent contractor, adjustment bureau, association,insurance company, broker, agent, or generalagent . . .) as particularly and significantly limiting the scope and effect of the Act. In my opinion such language is, on the contrary, all inclusive. That is, the statute attempts to delineate all conceivable employment relationships and entities. This is particularly true when you consider that the word "company" is defined generally in the insurance code to include:
 all corporations, associations, partnerships, or individuals engaged as insurers in the business of insurance . . .
C.R.S. 1973, 10-1-102(4).
Moreover, the statute contains a list of four carefully articulated classes of persons exempt from the definition of "adjuster" within the meaning of the statute. As a general rule of statutory construction, exemptions from the operation of licensing laws are not implied nor presumed but must be expressed in clear and unambiguous language; those persons seeking such exemptions must come within the statutorily articulated exemptions. The employees of the State Compensation Insurance Fund who are hired to adjust claims for the fund do not fall within any of these specific exemptions.
Third, it is clear from the statutory scheme under C.R.S. 1973,10-2-101 et seq. that the purpose of this Adjusters Licensing Act is to require a certain minimum level of personal integrity and competence for those persons who adjust losses arising under insurance policies. To this end, the Act contains a list of personal qualifications for those seeking an adjusters license in section 10-2-104. In addition, sections 10-2-106 and 107 contain provisions for examinations which must be taken and passed prior to receiving an adjuster's license. Finally, the Act contains provisions for denial, suspension, or revocation of an adjuster's license for cause as listed in section 10-2-115.
These provisions clearly indicate that an important object of this Adjusters Licensing Act is to insure trustworthiness and competence among all persons who adjust losses arising under insurance contracts for the purpose of serving the public good and preventing the business of claims adjusting from being conducted in a manner injurious to the public welfare. This is, of course, a statement of the general purpose of licensing laws.
Finally, it is generally the rule that trades, occupations, privileges and professions may be classified for the purposes of licensing laws. General classes may be further subdivided into particular subclasses with the result that some subclasses may be subject to licensing laws and others entirely exempt therefrom. Such subdivisions, however, must not be arbitrary; that is, they must be based upon intrinsic, natural and reasonable distinctions germane to the police or revenue purposes of the law. Tom'sTavern v. City of Boulder, 186 Colo. 321, 526 P.2d 1328
(1974).
Since the services performed by the claims adjusters employed by the State Compensation and Insurance Fund are identical to the services performed by claims adjusters for other workmen's compensation carriers, since the purpose of the Adjusters Licensing Act is to ensure that the profession of claims adjusting is conducted by persons who meet certain criteria of trustworthiness and competency, since the scope of the Adjusters Licensing Act is broad, the principles of equality and uniformity in the application of licensing laws require that the adjusters for the fund be licensed. Any interpretation of section 10-2-101et seq. which leads to an implied exemption of the adjusters for the State Compensation Insurance Fund from its effect may well be subject to attack as unreasonable and arbitrary. Tom's Tavern v. City of Boulder,supra.
SUMMARY
Therefore, I conclude that the adjusters employed by the State Compensation Insurance Fund are subject to the Adjusters Licensing Act, C.R.S. 1973, 10-2-101 et seq.
Very truly yours,
 J.D. MacFARLANE Attorney General
INSURANCE WORKMEN'S COMPENSATION STATUTORY CONSTRUCTION
C.R.S. 1973, 10-2-101
REGULATORY AGENCIES, DEPT. Insurance, Div. of
Claims adjusters employed by the Division of State Compensation Insurance Fund are subject to the general insurance adjuster licensing act set forth in C.R.S. 1973, 10-2-101 even though the Fund itself is governed by its own organic statute under C.R.S. 1973, 8-54-101. The duties of and services performed by the claims adjusters employed by the State Compensation Insurance Fund are identical to those of other insurance adjusters and fall within the broad definition of "adjuster" in § 10-2-101. Principles of equality and uniformity in the application of licensing laws require that adjusters for the Fund be licensed.